

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

**GERALD C. MANN**
**ATTORNEY GENERAL**

Honorable H. L. Washburn
County Auditor
Harris County
Houston, Texas

Dear Sir:

Opinion No. O-3209
Re: Whether or not crude oil
and refined products there-
from are subject to State
and county ad valorem taxes
in a case in which the crude
oil was imported for refin-
ing only and the products
exported under a custom duties
bond prescribed in Section
1311, Title 19, U.S.C.A.

This is in reply to your letter in which you ask
whether or not certain crude oil and refined products in
Houston, Harris County, Texas, on January 1, 1939, January
1, 1940, and January 1, 1941, are subject to State and
county ad valorem taxes.

According to the information we have received,
Eastern States Petroleum Company, Inc., purchased crude
oil in Mexico from Distribuidora de Petroleos Mexicanos,
an agency of the Government of Mexico. This oil was brought
to the United States for the sole purpose of refining it
at the purchaser's refinery at Houston, Texas, and export-
ing the refined products to foreign countries; and prior
to importing the crude oil, the Eastern States Petroleum
Company, Inc., posted a bond under the provisions of the
Customs Duties Laws as codified under Title 19, Section
1311, United States Code Annotated. The bond recited that
said company "has made application and been authorized to
operate certain bonded manufacturing warehouses of Class
6 for the purpose of refining certain articles, namely,
petroleum products for export", and said bond was in the
usual form and provided that it would be void "if the goods

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable H. L. Washburn, Page 2

entered within the period named shall be used for the sole purpose specified herein and if the articles manufactured or produced therefrom shall be properly withdrawn and truly exported from the United States within the period allowed by law or regulation, and shall not be relanded in the United States without proper entry thereof, . . ." Said bond was in effect during all of the time that the crude oil and the refined products therefrom was in the United States. All of the crude oil in question was refined into various products, and all of said products were exported in accordance with the terms of the bond.

The answer to your question depends on whether or not the levying of a State and County tax on the crude oil and refined products in question constitutes an interference with a regulation of foreign commerce by the Congress of the United States.

Article I, Section 8, of the Constitution of the United States, reads in part as follows:

"The Congress shall have power . . . to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes; . . ."

That power is explained in 11 American Jurisprudence 14 in words as follows:

". . . The power to regulate commerce with foreign nations, conferred upon Congress by the Constitution, is exclusive and plenary; its exercise may not be limited, qualified, or impeded to any extent by state action. In fact it has been intimated that the power of Congress where exercised in respect of foreign commerce may be broader than where exercised as to interstate commerce.

"The power to regulate commerce with foreign nations includes the entrance of ships, the importation of goods, and the bringing of persons into the ports of the United States."

Honorable H. L. Washburn, Page 3

An examination of the United States Internal Revenue Code shows that Congress has imposed a duty on crude petroleum imported into the United States and on gasoline and lubricating oils sold in the United States. Title 26, Sections 3412, 3413, 3420 and 3421, United States Code Annotated. However, such products are exempt from said duties if they are made from imported commodities and are duly exported and a bond guaranteeing such posted as required by law. Section 1311, Title 19, United States Code Annotated, reads in part as follows:

"All articles manufactured in whole or in part of imported materials, or of materials subject to internal-revenue tax, and intended for exportation without being charged with duty, and without having an internal-revenue stamp affixed thereto, shall, under such regulations as the Secretary of the Treasury may prescribe, in order to be so manufactured and exported, be made and manufactured in bonded warehouses similar to those known and designated in Treasury Regulations as bonded warehouses, class six: Provided, That the manufacturer of such articles shall first give satisfactory bonds for the faithful observance of all the provisions of law and of such regulations as shall be prescribed by the Secretary of the Treasury: . . .

"Whenever goods manufactured in any bonded warehouse established under the provisions of the preceding paragraph shall be exported directly therefrom or shall be duly laden for transportation and immediate exportation under the supervision of the proper officer who shall be duly designated for that purpose, such goods shall be exempt from duty and from the requirements, relating to revenue stamps."

The oil and the products in this case have been handled under the supervision and regulation of the United States Government throughout the entire time they were in Texas. We cannot escape the conclusion that an attempt on

Honorable H. L. Washburn, Page 4

the part of the State of Texas, or any subdivision thereof, to tax said products would constitute an interference with foreign commerce. This conclusion is borne out by the holding in the case of McGoldrick v. Gulf Oil Corporation, 309 U. S. 414, 84 L. Ed. 840, 60 Sup. Ct. 664, in which the City of New York attempted to impose a sales tax on the sale of petroleum products that had been refined from imported crude oil and sold to vessels engaged in foreign commerce, the same having been done under a bond, in accordance with the Federal statute, posted for the purpose of guaranteeing that the manufactured products would be exported so that they would escape certain Federal duties; and in holding that the City could not impose such a tax the Supreme Court of the United States said:

> "From the time of importation until the moment when the bunker 'C' oil is laden on vessels engaged in foreign trade, the imported petroleum and its product, the fuel oil, is segregated from the common mass of goods and property within the state, and is subject to the supervision and control of federal customs officers. It cannot lawfully be removed from the manufacturing warehouse except for delivery for use as fuel to a vessel engaged in foreign commerce and it cannot lawfully be diverted from such destination and use and cannot, after delivery to the vessel, be landed in the United States. Throughout, the oil is subject to the obligation of respondent's bonds that it shall remain under such supervision and control and shall not be diverted from its ultimate destination as ships' stores.

> "Article 942 of the Customs Regulations of 1931 provides that 'merchandise in bonded warehouse is not subject to levy, attachment, or other process of a State court. ..' and that 'imported goods in bonded warehouse are exempt from taxation under the general laws of the several States.' . . .

> "The statutes and regulations taken together operate as regulations of foreign commerce, as the legislative history shows they

were intended to do. . . .

". . . The congressional regulation, read
in the light of its purpose, is tantamount to a
declaration that in order to accomplish consti-
tutionally permissible ends, the imported mer-
chandise shall not become a part of the common
mass of taxable property within the state, pend-
ing its disposition as ships' stores and shall
not become subject to the state taxing power.
. . .The state tax in the circumstances must
fail as an infringement of the congressional
regulation of the commerce. . . ."

Our answer to your question is that the imported
crude oil and the refined products about which you ask,
and which are covered by the bond posted in accordance
with Section 1311, Title 19, U. S. C. A., are not subject
to State and County ad valorem taxes.

Yours very truly

APPROVED MAY 5, 1941

ATTORNEY GENERAL OF TEXAS

FIRST ASSISTANT
ATTORNEY GENERAL

By

Cecil C. Rotsch
Assistant

CCR:LM

